FILED

59 JUN 18 AM 10: 12

**IN THE UNITED STATES DISTRICT COURTS, DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA. OF ALABAMA
SOUTHERN DIVISION**

SHARON  WHALEY,                        )
                                       )
              Plaintiff,               )
                                       )
v.                                     )  CIVIL ACTION NO. CV-95-BU-2438-S
                                       )
LABSOUTH, INC. and MARK BASSETT,       )      **ENTERED**
                                       )
              Defendants.              )
                                          JUN 1 8 1999

**MEMORANDUM OPINION**

This case is before the undersigned magistrate judge upon referral of the "Defendants'

Motion to Exclude the Testimony of Sharon Gotlieb, Ph.D." ("Dr. Gotlieb"). (Doct. 42).

**I. PROCEDURAL HISTORY**

On December 29, 1995, Chief United States District Judge Sam C. Pointer, Jr., entered an

order requiring, *inter alia*, that the plaintiff submit her expert disclosures by April 15, 1996. (Doct.

8, p. 1). Additionally, the order provided that discovery was to be completed by June 18, 1996.

(Doct. 8, p. 2). The plaintiff filed a disclosure concerning Dr. Gotlieb's expert testimony that

included a preliminary psychological report, her curriculum vitae, and notice that she had not

testified in any other cases as an expert and that she would be paid $90 per hour. (Doct. 14). The

report states that she had been consulted to render an opinion concerning (1) the defendants' policies

and procedures for dealing with sexual harassment in the workplace and the defendants' handling

of the purported incident involving the plaintiff and (2) the extent of the plaintiff's psychological

injuries as a result of the purported harassment. (Doct. 42, Preliminary Psychological Report, p. 2).

On September 5, 1996, the defendants filed an objection to the use of Dr. Gotlieb. Specifically, they

69

asserted:

> Defendants object to Dr. Sharon Gotlieb as an expert witness in this matter in that Plaintiff failed to comply with Federal Rule of Civil Procedure 26(a)(2) and this Court's Scheduling Order entered on December 29, 1995, pertaining to the disclosure of expert witnesses and the submission of the expert's report as required under Fed. R. Civ. P. 26(a)(2)(B). Defendants aver that they did not waive by stipulation the requirements under this Court's Order and the Federal Rules of Civil Procedure. Defendants reserve the right to offer rebuttal expert testimony as authorized by Fed. R. Civ. P. 26(a)(2)(C).

(Doct. 27, p. 1)(footnote omitted).

The present motion to exclude Dr. Gotlieb's testimony was filed on October 16, 1998. (Doct. 42). The defendants request that the court exclude the testimony of Dr. Gotlieb because (1) she lacks sufficient experience or expertise in the area of sexual harassment; (2) she is not in a position to offer her expert opinion on any psychological harm resulting from the alleged harassment due to the fact that she did not examine the plaintiff prior to the onset of the alleged harassment; (3) the jury is capable of determining whether the purported behavior constitutes sexual harassment and what the effects of that conduct were; and (4) her evaluation of the plaintiff occurred almost 18 months after the last alleged act of harassment.

The plaintiff requested that the court defer consideration of this motion until trial. (Doct. 61). As this matter was specifically referred to the undersigned magistrate judge for resolution prior to trial, the motion to defer was denied. (Doct. 64).

Upon request of the court, the plaintiff supplemented the record with documentation concerning the qualifications of Dr. Gotlieb. Included in the submission were a "declaration" of Dr. Gotlieb and an updated curriculum vitae. The pleading also listed the cases she "has testified by deposition as an expert witness." (Doct. 58). The defendants filed a response to the plaintiff's

submission which included excerpts from depositions of Dr. Gotlieb in other cases. (Doct. 59).

The motion was set for a hearing on May 3, 1999. Because counsel for the plaintiff had not received the defendants' last response, the court allowed the plaintiff additional time to file any reply. The defendants were then afforded time to respond to any submission by the plaintiff. (Courtroom notes, dated May 3, 1999). The plaintiff filed a reply and the defendants did likewise. (Docts. 65 & 66). The plaintiff withdrew its proffer of Dr. Gotlieb as an expert witness on sexual harassment policies. (Doct. 65, p. 2).[1] Accordingly, the court will deem this portion of the proffer of her testimony withdrawn. In the defendants' final reply, they assert that the remainder of her testimony is due to be excluded under *Fed. R. Evid.* 403 as the "value of [Dr.] Gotlieb's proposed testimony is substantially outweighed by the danger of confusion of the issues, or misleading the jury, and by considerations of undue delay and waste of time." (Doct. 66, p. 2).

## II. DISCUSSION

### A. Generally

The preliminary issue to be resolved is whether the plaintiff has made a sufficient showing under the standard set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), to allow the testimony of Dr. Gotlieb at trial. In *Daubert*, the Supreme Court established a two-prong analysis for determining whether expert scientific testimony is admissible under *Fed. R. Evid.* 702:[2] (1) whether the evidence is reliable, that is, does it constitute

---

[1] The plaintiff asserts that this decision was made "to save costs, eliminate confusion generated by the defendants' attacks and to avoid spending any additional time on the scope of Dr. Gotlieb's testimony." (Doct. 65, p. 2). The court would note, however, that Dr. Gotlieb stated in a deposition in *Malone v KMart Corporation*, CV 99-O-467-S (M.D. Ala.), that she was not claiming to be an expert in sexual or racial harassment policies or procedures. (Doct. 59, Ex. A, p. 148).

[2] *Federal Rule of Evidence* 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the

3

scientific knowledge; and (2) whether the testimony is relevant, that is, would it "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* at 589-91, 113 S. Ct. at 2794-96.

In *Kumho Tire Company, Ltd. v. Carmichael*, ___ U.S. ___, 119 S. Ct. 1167, 141 L. Ed. 2d 711 (1999), the Court held that the *Daubert* "gatekeeping" obligation, requiring preliminary inquiry into the relevance and reliability of the proposed testimony applies to all expert testimony. *Kumho*, 119 S. Ct. at 1174. Where the testimony's "factual basis, data, principles, methods, or their application are called sufficiently into question . . . , the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of the relevant discipline.'" *Id.* at 1175.

In sum, the basic considerations in determining the admissibility of expert testimony include inquiries into whether (1) the expert is qualified to testify competently regarding the matters he or she intends to address; (2) the methodology by which the expert reaches his or her conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1999), *petition for cert. filed*, ___ U.S. ___, No. 98-1807 (May 10, 1999)(footnote omitted).

### B. The Defendants' Objections

#### 1. Lack of qualifications

The defendants challenge Dr. Gotlieb's being allowed to testify under the first criteria

---

evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

enumerated in *Harcros Chemicals*, asserting that she is not qualified to render an opinion on the psychological effects of the alleged sexual harassment on the plaintiff. Specifically, they assert that her "curriculum vitae suggests that her training, experience, and scholarly work has been focused almost exclusively on issues of child psychology and development." (Doct. 43, p. 2). In the defendants' April 19, 1999 response, they state: "Conspicuous by its absence from both [Dr.] Gotlieb's curriculum vitae and her supplementary affidavit is any reference to experience in dealing with harassment or discrimination as a source of mental distress." (Doct. 59, p. 3).

The declaration of Dr. Gotlieb shows that she graduated from the University of Alabama in Birmingham ("UAB") in August 1990 with a Doctorate of Philosophy in clinical psychology. (Doct. 58, Gotlieb declaration, p. 1). She began work as a clinical psychologist with an appointment as an assistant professor in the School of Public Health and the Department of Obstetrics within the School of Medicine at UAB. (*Id.*, p. 2). She did interdisciplinary research, teaching, and clinical intervention with high risk pregnancies. Specifically, the work involved the examination of "the relationship of life stress, emotional status, coping strategies and pregnancy outcomes."(*Id.*, p. 3). The declaration goes on to describe her work since June 1992 in private practice as a clinical psychologist. She states that she has treated "a wide range of problems, primarily adults, with diagnoses of depression, anxiety, post traumatic stress disorder, personality disorders, somatitization, adjustment disorders, relationship problems and sexual dysfunction." (*Id.*, p. 3). She estimates that 70% (approximately 350) of her clients have been adults, "[m]any of whom have been presented with histories of physical, emotional, or sexual abuse. A few [of which] have had issues of sexual harassment and discrimination in their work environment." (*Id.*). Additionally, the submitted material shows that over the last three years Dr. Gotlieb has been consulted as an expert in the areas

5

of sexual harassment or racial discrimination approximately 22 times by counsel for the plaintiff. (Doct. 59, Ex. C; Doct. 65, Attachment, pp. 1, 25). Approximately one-third of the listed cases involved allegations of sexual harassment. (Doct. 65, Attachment, p.18).[3] Dr. Gotlieb states in her declaration that she has "gained knowledge in the field of sexual harassment primarily through reading and consultation with other psychologists with experience in this area." (Doct. 58, declaration, p. 5). Finally, she attached a reference list of some of the materials that she has read and relied upon in preparation for cases involving sexual harassment. (Id.). The list includes approximately fifty books or articles addressing, according to Dr. Gotlieb, assessment of psychological damages in cases of sexual harassment. (Id.).

Dr. Gottlieb's professional background has generally focused on maternal and child health. She has not published any material in the area of sexual harassment. Her publication list focuses on issues dealing with children. She has also presented lectures dealing with matters such as depression, family violence, and parenting. (Doct. 59, Ex. B, deposition, pp. 11-12). Since December 1997, however, the majority of her practice has involved adult patients with diverse problems. In the course of taking patient histories, she has recognized and noted race discrimination and sexual harassment issues faced by some of her patients. (Id. at pp. 12-13).

Although Dr. Gotlieb's experience weighs more heavily in the area of maternal and child issues, the court finds that, under the present circumstances, she is qualified by her training and experience "to testify competently" as to the plaintiff's mental condition and any underlying

_____

[3] Additional consultations may have involved allegations of sexual harassment, however, the plaintiff's submission does not clearly identify the nature of the allegations in many of the listed cases. (Doct. 65, Attachment, p. 25). Although the document listing the cases notes that Dr. Gotlieb's "area" is sexual harassment and racial discrimination, it lists a limited number of cases which clearly identify the nature of the case as "sexual harassment." (Id.)

causation, including purported sexual harassment. *Harcros Chemicals, Inc.*, 158 F.3d at 562. Dr.

Gotlieb's qualifications are sufficient under the applicable standard. That she does not specialize

in the psychological effects of sexual harassment does not preclude her testimony. *See Mitchell v.*

*United States*, 141 F.3d 8, 15 (1st Cir. 1998)("The fact that the physician is not a specialist in the

field in which he is giving his opinion affects not the admissibility of his opinion but the weight the

jury may place on it."); *Compton v. Subaru of America, Inc.*, 82 F.3d 1513, 1520 (10th Cir.)("As long

as an expert stays 'within the reasonable confines of his subject area,' our case law establishes 'a

lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight.'"),

*cert. denied*, 519 U.S. 1042, 117 S. Ct. 611, 136 L. Ed. 2d 536 (1996). The record sufficiently

demonstrates that Dr. Gotlieb satisfies the minimal requirements under the applicable standard. The

defendants' challenges certainly are matters that may be addressed during their cross-examination

of Dr. Gotlieb before the jury.

### 2. Dr. Gotlieb did not examine the plaintiff until after the onset

The defendants object to the testimony of Dr. Gotlieb premised on the fact that she did not

examine the plaintiff prior to the onset of the sexual harassment. They cite no authority in support

of this position.

There is no question that it would have been helpful for Dr. Gotlieb to have been able to

interview the plaintiff before the purported onset of any harassment. There is no legal requirement,

however, that the testifying expert must examine the plaintiff before the incident occurs. That would

be an unreasonable restriction on the admissibility of expert testimony.

### 3. The jury is capable of determining the issue without expert assistance

The defendants next challenge Dr. Gotlieb's testimony under the third criteria enumerated

in *Harcros Chemicals*, stating that "the jury is capable, from its own experiences, of determining whether any alleged behavior constitutes sexual harassment and what effects, if any resulted from any such alleged sexual harassment; therefore, expert testimony in this case is inappropriate and unlikely to assist the trier of fact." (Doct. 41, p. 2).  The defendant argues that Dr. Gotlieb's testimony, which concerns the plaintiff's present mental state and her opinion as to the causation of certain psychological manifestations, will not "assist the trier of fact to understand the evidence or to determine a fact in issue."

Various courts have recently recognized the probative value of expert testimony regarding the causation of emotional conditions. *See Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1298-99 (8th Cir. 1997), *cert. denied,* ___U.S.___, 118 S. Ct. 2370, 141 L. Ed 2d 738 (1998)(finding that expert testimony should have been allowed on the issue of causation and damages in a case involving claims of sexual discrimination, sexual harassment, and state law torts); *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1358 (4th Cir. 1995)(allowing expert testimony in a sexual harassment case that the plaintiff's symptoms were consistent with someone who had been sexually assaulted); *Webb v. Hyman*, 861 F. Supp. 1094, 1114-15 (D.D.C. 1994)(allowing a psychologist to testify that harassment caused the plaintiff's mental harm by bringing out deeply repressed emotions relating to her childhood abuse).

Provided that Dr. Gotlieb testifies that there is a causal connection between the plaintiff's emotional condition and the purported actions of the defendants, her testimony is admissible.  The defendants' reliance on *Lipsett v. University of Puerto Rico*, 740 F. Supp. 921 (D.P.R 1990), to support exclusion of her testimony, is not persuasive concerning this aspect of Dr. Gotlieb's testimony. In *Lipsett*, the plaintiffs offered experts to provide testimony as to what constitutes sexual

8

harassment, including a hostile work environment. *Lipsett*, 740 F. Supp. at 924.  Specifically, the

plaintiff proffered a social worker and a social psychologist "to testify about sexual harassment and

any facts underlying any case upon which the law of sexual harassment is applicable and whether

or not there has been sexual harassment and a hostile work environment in violation of the law which

would make the defendants liable. . . ." *(Id.* at 925).   The court properly excluded this testimony

because it was far too general to connect the injuries of the plaintiff in that case to the actions of the

defendant.   Dr. Gotlieb's proposed testimony is factually distinguishable from that offered in

*Lipsett.*[4]

### 4. Delay in examining the plaintiff

The defendants' next assert that Dr. Gotlieb should be excluded from testifying due to the

fact that she did not examine the plaintiff until almost eighteen months after the last alleged act of

---

[4] A review of *Lipsett* indicates that counsel most likely cited this case concerning the plaintiff's earlier intent to offer Dr. Gotlieb as an expert in the area of sexual harassment policies and investigation. The defendants also cite *Bohen v City of East Chicago*, 622 F. Supp. 1234, 1243, n.4 (N.D. Ind. 1985), *aff'd in part and rev'd in part on other grounds*, 799 F.2d 1180 (7th Cir. 1986). In *Bohen*, the court in a sexual harassment and assault case stated:

> Although an expert on sexual harassment testified for [plaintiff] Bohen that harassment may lead to tension, anxiety, loss of sleep, diminished self-worth, nausea, cramps, and headaches, the expert did not suggest that harassment commonly leads to prolonged shouting matches and the filing of false criminal charges. [Plaintiff] Bohen was in trouble in February 1980, only two months into her employment; ours is not the case of a mild-mannered person slowly driven mad by unwanted sexual attention. A conclusion that the sexual harassment caused the attitudes that led to Bohen's discharge would be pure speculation."

*Bohen*, 622 F. Supp. at 1243 (footnote omitted). The omitted footnote provided:

> I do not mean that a plaintiff must produce an expert who links her problems to the harassment. Experts on this subject know no more than judges about what causes mental changes--which is to say that they know almost nothing. If Bohen had established some gradual change in her personality, I would be inclined to find causation. But Bohen did not do this; there is no evidence about her history of earlier employment (other than the fact that she held jobs, at least one of very short duration). None of her friends or children testified about her demeanor and how it changed over time  Bohen maintained, indeed, that the shouting matches never occurred, so perhaps she would have had a hard time simultaneously arguing that she came unglued as a result of harassment.

*Id.* 622 F. Supp. at 1243, n.4. *Bohen* is distinguishable from the present case. As already noted, the plaintiff must establish that her mental health situation is connected to the defendants' alleged conduct. If she fails to demonstrate this, Dr. Gotlieb should not  be allowed to offer evidence of the plaintiff's present mental condition.

sexual harassment. The defendants do not cite any authority in support of this proposition. This fact does not preclude the admission of Dr. Gotlieb's testimony in this case. It may, however, be a matter appropriate for cross-examination during trial.

### 5. *Fed. R. Evid.* 403

The defendants next argue that Dr. Gotlieb's testimony should be excluded under Rule 403 of the *Federal Rules of Evidence* because it is more prejudicial than probative. They contend that allowing Dr. Gotlieb to testify would confuse and mislead the jury, cause undue delay, and waste time. (Doct. 66, p. 2).

A trial court may exclude otherwise admissible evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." *Fed. R. Evid.* 403. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *United States v. Gilliard*, 133 F.3d 809, 815 (11th Cir. 1998), *citing Daubert*, 509 U.S. at 595, 113 S. Ct. at 2798 (internal quotations and citation omitted).

The court finds that (1) requiring Dr. Gotlieb to demonstrate a causal connection between the alleged conduct and the manifestation of emotional harm and (2) giving jury instructions on the appropriate use of expert evidence will ensure that the probative value of this testimony will not be outweighed by any of the considerations under Rule 403.

## III. CONCLUSION

Premised on the foregoing, the defendants' motion to exclude the testimony of Dr. Gotlieb (doct. 42) is due to be denied. An appropriate order will be entered contemporaneously herewith.

10

**DONE** this the 17th day of June, 1999.

JOHN E. OTT
UNITED STATES MAGISTRATE JUDGE